**MURRAY, STONE & WILSON, PLLC**
Matthew T. Stone, Esquire
William P. Murray, III, Esquire
Attorney Identification No. 206409
1601 Cherry Street, Suite 1300
Philadelphia, Pennsylvania 19102
215-972-0811
mstone@mswlawgroup.com
wmurray@mswlawgroup.com

THIS IS NOT AN ABRITRATION CASE. ASSESSMENT OF DAMAGES IS REQUIRED; JURY TRIAL DEMANDED.

Counsel for Plaintiff, Romed, Inc.

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**ROMED, INC.**
2860 Hedley Street
Philadelphia, PA 19137

Plaintiff,

v.

**JOSEPH SCHWARTZ**
1859 54th Street
Brooklyn, NY 11204
and
40 Vreeland Avenue, Suite 105
Totowa, NJ 07512
and
505 Marlboro Road
Woodridge, NJ 07075

And

**SKYLINE HEALTHCARE, LLC, a/k/a, SKYLINE HEALTH CARE, LLC**
40 Vreeland Avenue, Suite 105
Totowa, NJ 07512
and
505 Marlboro Road
Woodridge, NJ 07075

And

**SKYLINE CARE, LLC**
40 Vreeland Avenue, Suite 105
Totowa, NJ 07512

Civil No.

COMPLAINT

JURY DEMAND

and
505 Marlboro Road
Woodridge, NJ 07075

And

**SKYLINE PA MANAGEMENT, LLC**
8601 Stenton Avenue
Wyndmoor, PA 19038
and
40 Vreeland Avenue, Suite 105
Totowa, NJ 07512
and
505 Marlboro Road
Woodridge, NJ 07075

And

**JS PENNSYLVANIA HEALTHCARE HOLDINGS, LLC**
8601 Stenton Avenue
Wyndmoor, PA 19038
and
40 Vreeland Avenue, Suite 105
Totowa, NJ 07512
and
505 Marlboro Road
Woodridge, NJ 07075

And

**ROSIE SCHWARTZ**
1859 54th Street
Brooklyn, NY 11204
and
40 Vreeland Avenue, Suite 105
Totowa, NJ 07512
and
505 Marlboro Road
Woodridge, NJ 07075

And

**SKYLINE MANAGEMENT GROUP, LLC**
40 Vreeland Avenue, Suite 105
Totowa, NJ 07512

and
505 Marlboro Road
Woodridge, NJ 07075

And,

**LANSDALE CARE AND REHABILITATION CENTER, LLC, D/B/A LANSDALE CARE AND REHABILITATION CENTER**
25 W 5th Street
Lansdale, PA 19446

**PHOENIXVILLE CARE AND REHABILITATION CENTER, LLC D/B/A PHOENIXVILLE CARE AND REHABILITATION CENTER**
833 South Main Street
Phoenixville, PA 19460

And

**RC OPERATOR D/B/A WILLOW TERRACE NURSING CENTER,**
1 Penn Boulevard
Philadelphia, PA 19144

And

**STENTON CARE AND REHABILITATION CENTER LLC D/B/A STENTON CARE AND REHABILITATION CENTER**
7310 Stenton Avenue
Philadelphia, PA 19150

And

**LANCASTER CARE AND REHABILITATION CENTER, LLC D/B/A LANCASTER CARE AND CENTER**
425 N Duke Street
Lancaster, PA 17602

And

**DOYLESTOWN CARE AND
REHABILITATION CENTER, LLC
D/B/A DOYLESTOWN CARE AND
REHABILITATION CENTER**
432 Maple Avenue
Doylestown, PA 18901

And

**READING CARE AND
REHABILITATION CENTER, LLC
D/B/A EXETER GREENS CARE AND
REHABILITATION CENTER**
21 Fairlane Road
Reading, PA 19606

And

**ROSEMONT CARE AND
REHABILITATION CENTER, LLC
D/B/A ROSEMONT CARE AND
REHABILITATION CENTER**
35 Rosemont Avenue
Bryn Mawr, PA 19010

And

**WYNDMOOR CARE CENTER, LLC
D/B/A WYNDMOOR CARE AND
REHABILITATION CENTER**
8601 Stenton Avenue
Wyndmoor, PA 19038

      Defendants.

## COMPLAINT

Plaintiff, Romed, Inc., by and through undersigned counsel, Murray, Stone & Wilson, PLLC, files the instant Complaint in Civil Action, and in support thereof avers the following:

## PRELIMINARY STATEMENT

Joseph Schwartz has recently been divested, through involuntary state-initiated receivership proceedings, of his ownership interest in over 50 nursing homes across the country for non-payment of bills and for endangering the safety of the residents of these homes. From January 1, 2017 to May 1, 2018, Mr. Schwartz grew his nursing home empire from five nursing homes to over 100, only for the states of South Dakota, Nebraska, Arkansas, Florida and Pennsylvania to place many of these homes into receivership. During this time, Mr. Schwartz stood atop a scheme to intentionally defraud employees, third party vendors and ultimately the residents themselves. This case involves just one example of the havoc Mr. Schwartz has wrought on those with whom he has come into contact.

## I. PARTIES

### Plaintiff

1. Romed, Inc. is a medical transport corporation domiciled in Pennsylvania with a principal place of business located at 2860 Hedley Street, Philadelphia, PA 19137. It is one of the largest medical transport companies in the tri-state area.

### Defendants, Joseph Schwartz, Rosie Schwartz, Skyline Health Care, LLC, Skyline Care, LLC, Skyline Management Group, LLC, JS Pennsylvania Healthcare Holdings, LLC, Phoenixville Care and Rehabilitation Center, LLC d/b/a Phoenixville Care and Rehabilitation Cen, Lansdale Care and Rehabilitation Center, LLC d/b/a Lansdale Care and Rehabilitation Center, RC Operator d/b/a Willow Terrace Nursing Center, Stenton Care and Rehabilitation Center d/b/a Stenton Care and Rehabilitation Center, Lancaster Care and Rehabilitation Center, LLC d/b/a Lancaster Care and Rehabilitation Center, Doylestown Care and Rehabilitation Center, LLC d/b/a Doylestown Care and Rehabilitation Center, Reading Care and Rehabilitation Center, LLC d/b/a Exeter Greens Care and Rehabilitation Center, Rosemont Care and Rehabilitation Center, LLC d/b/a Rosemont Care and Rehabilitation Center, and Wyndmoor Care Center, LLC d/b/a Wyndmoor Care and Rehabilitation Center

2. Defendants Joseph Schwartz and Rosie Schwartz (the "Schwartzes"), husband and wife, are the sole members of Defendants Skyline Healthcare, LLC, Skyline Management Group,

LLC and dozens of limited liability companies operating nursing homes across the country. They reside and are domiciled in New York, though regularly conduct business in Philadelphia.

3. Defendant, Skyline Healthcare, LLC, is a limited liability corporation domiciled in New York and is engaged in the business of owning, operating and/or managing nursing homes, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia County, Pennsylvania; and at all times material hereto was the employer, supervisor and/or partner of all other Defendants noted herein.

4. Defendant, Skyline Care, LLC, is a limited liability corporation domiciled in New York and is engaged in the business of owning, operating and/or managing nursing homes, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia County, Pennsylvania; and at all times material hereto was the employer, supervisor and/or partner of all other Defendants noted herein.

5. Defendant, Skyline Management Group, LLC is a limited liability corporation domiciled in New York and engaged in the business of owning, operating and/or managing nursing homes, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia County, Pennsylvania; and at all times material hereto was the employer, supervisor and/or partner of all other Defendants noted herein.

6. Defendant Skyline PA Management, LLC is a limited liability corporation domiciled in New York and engaged in the business of owning, operating and/or managing nursing homes, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia County, Pennsylvania; and at all times material hereto was the employer, supervisor and/or partner of all other Defendants noted herein.

7. Defendant JS Pennsylvania Healthcare Holdings, LLC (collectively with Skyline Healthcare, LLC, Skyline Care, LLC Skyline Management Group, LLC, Skyline PA Management, LLC and the Schwartzes, the "Skyline Enterprise") is a limited liability corporation domiciled in New York and engaged in the business of owning, operating and/or managing nursing homes, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia County, Pennsylvania; and at all times material hereto, duly licensed to operate same in the Commonwealth of Pennsylvania; and was the employer, supervisor and/or partner of all other Defendants noted herein.

8. Defendants Phoenixville Care and Rehabilitation Center, LLC d/b/a Phoenixville Care and Rehabilitation Center, Lansdale Care and Rehabilitation Center, LLC d/b/a Lansdale Care and Rehabilitation Center, RC Operator d/b/a Willow Terrace Nursing Center, Stenton Care and Rehabilitation Center d/b/a Stenton Care and Rehabilitation Center, Lancaster Care and Rehabilitation Center, LLC d/b/a Lancaster Care and Rehabilitation Center, Doylestown Care and Rehabilitation Center, LLC d/b/a Doylestown Care and Rehabilitation Center, Reading Care and Rehabilitation Center, LLC d/b/a Exeter Greens Care and Rehabilitation Center, Rosemont Care and Rehabilitation Center, LLC d/b/a Rosemont Care and Rehabilitation Center, and Wyndmoor Care Center, LLC d/b/a Wyndmoor Care and Rehabilitation Center (collectively the "Pennsylvania Facilities") are all limited liability corporations domiciled in New York which operate Pennsylvania nursing homes.

9. At all times material hereto, the Skyline Enterprise collectively, and/or through a joint venture or partnership, owned, operated, managed and controlled the Pennsylvania Facilities, and was responsible for the fiscal decisions made for the same.

10. The Schwartzes are the sole members of all other defendant limited liability companies.

## II.   JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as maximum diversity exists and the amount in controversy exceeds $75,000.00. The cause(s) of action all arose in the Eastern District of Pennsylvania.

## III.   FACTUAL BACKGROUND

### The Skyline Enterprise

12. The Skyline Enterprise, as defined herein, represents a small fraction of the corporations, partnerships and limited liability entities that Joseph and/or Rosie Schwartz own, manage and control.

13. The Skyline Enterprise is not – and never was – a legitimate, functioning nursing home chain.

14. The entities that comprise the Skyline Enterprise were created for the purposes of obfuscation, risk management and financial gain.

15. Joseph and Rosie Schwartz intentionally divided the various components required to operate their nursing homes, including the Pennsylvania Facilities herein, amongst various entities that they own and control.

16. Joseph and Rosie Schwartz could have organized the Pennsylvania Facilities to independently perform all of the services and tasks necessary for their operation, but instead chose to structure those various services and tasks amongst multiple separate entities – the Skyline Enterprise – that they own and control.

17. The Skyline Enterprise's structure was not employed for any legitimate purpose.

18. Rather, the Skyline Enterprise was utilized by Joseph and Rosie Schwartz to obtain access to the revenue generated by nursing home operations, such revenue being paid by Medicare, state Medicaid programs, insurance companies, and from nursing home residents and their families.

19. Instead of using the revenue generated by the Skyline Enterprise to satisfy their financial obligations, Joseph and Rosie Schwartz regularly withdrew the revenue for their personal benefit, to the detriment of the Pennsylvania Facilities' solvency, third party vendors like Plaintiff, and residents at the Pennsylvania Facilities.

20. The revenue generated by the Skyline Enterprise was likewise diverted by Joseph and Rosie Schwartz via inter-company transfers masquerading as fees for services.

21. Joseph and Rosie Schwartz utilized each of the Skyline Enterprise entities in furtherance of their overriding mission: to generate large sums of revenue that could be (and ultimately were) re-directed at the Schwartzes' whim, regardless of their financial obligations.

22. Joseph and Rosie Schwartz caused licensure applications to be filed with the Commonwealth of Pennsylvania that did not correctly reflect the Facility's operation, management, ownership and/or structure.

**The Schwartzes Lucrative Foray Into Nursing Care**

23. In or around 2008, the Schwartzes created Skyline Healthcare, LLC to operate as a management company for several nursing homes owned by the Schwartzes in Pennsylvania and New Jersey. Mr. and Mrs. Schwartz are the sole members of Skyline Healthcare, LLC. In 2015, the Schwartzes owned, operated, and/or managed approximately five skilled nursing facilities in New Jersey and Pennsylvania.

24. Between 2015 and 2017, the Schwartzes acquired in excess of 100 nursing homes across the country. Each of these homes identified 505 Marlboro Road, Wood Ridge, NJ 07075-1235 as the address of its home office.[1] Thus, in a span of 2 years, the Schwartzes went from owning a handful of nursing facilities to running one of the largest nursing home chains in the country.

25. In connection with the acquisition of these new homes, the Schwartzes created Skyline Management, LLC, Skyline PA Management, LLC and JS PA Holdings, LLC to act as vehicles, along with Skyline Healthcare, LLC, to control the flow of money from the Pennsylvania Facilities to the Schwartzes own bank accounts.

26. In January of 2017, the Schwartzes acquired several homes in Pennsylvania, including Phoenixville Care and Rehabilitation Center, Willow Terrace Care and Rehabilitation Center, Stenton Care and Rehabilitation Center, Lancaster Care and Rehabilitation Center, Doylestown Care and Rehabilitation Center, Exeter Greens Care and Rehabilitation Center, Rosemont Care and Rehabilitation Center, and Wyndmoor Care and Rehabilitation Center. The sole members of the Pennsylvania Facilities are Joseph Schwartz and Rosie Schwartz. At all relevant times, Plaintiff provided ambulance services at each of the Pennsylvania Facilities.

27. Immediately, the Schwartzes under-funded and over-leveraged every one of their newly-acquired homes, including each of the Pennsylvania Facilities.

28. Capitalization became dangerously inadequate insofar as bills were no longer paid to vendors providing services at the nursing homes.

29. Mr. Schwartz forecast his propensity – and intent – to defraud third-party vendors during a June 15, 2017 deposition in a nursing home abuse and neglect case. When asked about

---

[1] A Google images photo of this office, conspicuously above a New Jersey pizza shop, is attached as **Exhibit "A."**

the importance of paying bills, Mr. Schwartz responded: " . . . because a guy sends a bill in doesn't mean he needs to get paid."[2] And later when asked whether he is in charge of deciding which bills to pay at Skyline nursing homes, Mr. Schwartz responded: "Again, I've explained to you. I'm constantly telling you, if a bill is not paid, could be there's a disagreement. Because you bill doesn't mean that's the number you're entitled to."[3]

30. In Pennsylvania, Nebraska, South Dakota and other states, state-receivership proceedings were commenced to divest the Schwartzes from operating these facilities due to non-payment of vendors and neglect of residents. Among these facilities were the Pennsylvania Facilities.

31. In North Dakota for example, the following was written about the state of affairs at the Redfield Care and Rehabilitation Center LLC:

> According to court documents filed this week, Menzenberg emailed several people, including at the state health department, labeling the message "URGENT" and of "High" importance. "I again have not gotten any information from Skyline!!! I just had a call from Louis Schwartz - he says STATE has to do something - there is no money - he told me to discharge residents????" "I need water paid at Bella Vista and Prairie Hills today or it will be SHUT OFF — Skyline is SILENT!!!!" "I need Electric paid at Prairie Hills or shut off — Skyline is SILENT!!! "Disconnect notice came today for Pierre May 8 electric. I NEED HELP!!!!"[4]

Menzenberg, refers to Debbie Menzenberg, a regional director of operations for Skyline Healthcare, LLC.

---

[2] Dep. Tr. J. Schwartz, *Devine v. Willow Terrace*, No. 141203114 (C.P. Philadephia) at 90:1-3, the relevant portions of which are attached as **Exhibit "B."**
[3] *Id.* At 104:18-23.
[4] https://www.capjournal.com/news/with-patients-at-risk-sout-dakota-judge-orders-pieree-nursing/article_39b57e46-4e8c-11e8-bb86-0f93c37a5915.html (last accessed September 14, 2018).

32. Likewise in Pennsylvania, employees at Schwartz-run facilities made similar complaints: "Our paychecks, they are never accurate. We can't see our vacation time. There are deductions being taken out that we don't understand why they're being deducted."[5]

33. To date, more than 50 of the recently acquired facilities have been placed into receivership by the respective state oversight agencies due to non-payment of bills.

34. However, despite the refusal to honor contracts at these facilities, and despite being divested of the operational control of many facilities for this reason, the Schwartzes continued to acquire new homes as recently as February, 2018.

35. What is clear is that the Schwartzes designed a scheme to acquire as many facilities as possible, pocket as much revenue as possible, as quickly as possible, and then wash their hands of the whole enterprise. Indeed, a spokesman for Skyline Healthcare, LLC conceded that the Skyline Enterprise was are already transitioning out of the nursing home industry, a year after acquiring more than 100 nursing homes: "[A]s with any transition, there have been hurdles."[6]

36. The Pennsylvania Facilities all operated at a spreadsheet loss while paying the Skyline Enterprise exorbitant "management fees."

37. The Schwartzes did not negligently or carelessly get in "over their heads." Rather, they knowingly and intentionally engaged in a scheme to illicitly make as much money as possible while shirking any and all obligations.

**Romed, Inc. Contracts with the Facilities**

38. Between February 1, 2017 and April 5, 2018, Plaintiff entered into contracts with the Pennsylvania Facilities to provide medical transportation services to their residents. At the

---

[5] http://www.philly.com/philly/business/questions-about-skyline-healthcare-after-nursing-home-collapse-in-nebraska-and-kansas-20180412.html?mobi=true (last accessed September 14, 2018).
[6] https://insurancenewsnet.com/oarticle/receivership-clearing-hurdles-nearly-two-months-later#.W1dFaeS0WM- (last accessed September 14, 2018).

time of contracting, Plaintiff was deceived into believing Defendants intended to honor the contracts. In reality, the Skyline Enterprise was created to ship revenue to the Schwartzes from the Pennsylvania Facilities at the expense of third-party vendors like Romed, Inc.

39. Most of these contracts were written contracts with the individual facilities in the case of Willow Terrace, Lansdale Care and Rehabilitation Center, Doylestown Care and Rehabilitation Center, Stenton Care and Rehabilitation Center, Rosemont Care and Rehabilitation Center, Reading Care and Rehabilitation Center and Phoenixville Care and Rehabilitation Center.[7]

40. Others were oral contracts to continue to provide services in accordance with the contracts in place with the prior operators, in the case of Lancaster Care and Rehabilitation Center and Wyndmoor Care and Rehabilitation Center.

41. While the administrators of the various facilities were the signatories to the agreements, the Skyline Enterprise was responsible for all negotiations and payment (or non-payment) of invoices. Indeed, the Pennsylvania Facilities' employees had no access to any monies with which to pay third-party vendors.

42. The contracted arrangement was that Plaintiff would provide ambulance services to the residents at the Facility and in turn, bill the facility for the services rendered. The facility would then send these invoices from the Plaintiff to the Skyline Enterprise to arrange for payment.

43. The vast majority of residents at the Pennsylvania Facilities were paying for their stay using the Pennsylvania Medicaid program ("Medicaid"). Medicaid residents are typically affixed a daily reimbursement rate which is the amount Medicaid will pay the Pennsylvania Facilities for a particular resident's care. Transportation to and from hospitals and other medical offices is factored into that reimbursement rate.

---

[7] Copies of the contracts with the Pennsylvania Facilities are attached collectively hereto as **Exhibit "C."**

44. As such, the Pennsylvania Facilities, and by extension, the Skyline Enterprise, are paid "up front" by Medicaid for resident transportation, even if that resident never needs transportation.

45. Over the course of the next year, despite having the Pennsylvania Facilities send accurate and appropriate invoices from Plaintiff to the Skyline Enterprise, the Skyline Enterprise repeatedly declined to pay Plaintiff's invoices. During this time, Plaintiff dealt almost entirely with representatives of Skyline Healthcare, LLC, which listed a 3388 Princess Anne Road, Virginia Beach, VA 23456, as its place of business; office space above a strip mall.[8]

46. On several occasions, Plaintiff received calls from Joseph Schwartz personally, asking for additional time to make payments – payments which never came in any event – and promising Plaintiff future business opportunities. In so doing, Mr. Schwartz held himself out as the controlling entity responsible for the operation of the Pennsylvania Facilities.

47. In reality the Schwartzes, as the alter ego of the Pennsylvania Facilities, controlled the Pennsylvania's business without regard to the separate existence of the corporate entity, and have used the phony corporate façade to deprive Plaintiff and the other vendors of the monies that are contractually owed.

48. In March of 2018, Plaintiff's primary contact at Skyline Healthcare, LLC, Theresa Richardson, began sending emails from an entirely new business name: First Landing Information Services.

49. Attempts to reach Ms. Richardson in the months leading up to the filing of this complaint at her listed number 757-453-1501 Ext. 232, have continuously been met with a recording "you have reached extension 238, no one is available to take your call right now."

---

[8] A google image of 3388 Princess Anne Road, Virginia Beach, VA 23456 is attached as **Exhibit "D."**

50. Defendants currently owe in excess of $200,000.00 to Plaintiff pursuant to the contracts entered into with the Pennsylvania Facilities.

**COUNT ONE – BREACH OF CONTACT AGAINST THE PENNSYLVANIA FACILITIES**

51. Plaintiff incorporates all previous paragraphs as though stated herein.

52. Between February of 2017 and April of 2018, Plaintiff entered into contracts for the provision of medical transport services with the Pennsylvania Facilities.

53. In consideration for the provision of medical transport services, the Pennsylvania Facilities were obligated to reimburse Plaintiff at an agreed upon rate.

54. These contracts each stated that payment for medical transport services was due within 60 days of receipt of invoices for the same.

55. The Pennsylvania Facility Defendants failed to abide by the terms of these contracts and thus have breached the same.

56. As a result of Defendants' breach, Plaintiff has been injured.

WHEREFORE, Plaintiff, respectfully requests that judgment be entered in its favor, and against Defendants, in an amount in excess of Seventy Five Thousand Dollars ($75,000.00), together with punitive damages, costs, attorney's fees, treble damages, disgorgement and any other relief that this Honorable Court deems appropriate given the circumstances. A jury trial is demanded.

**COUNT TWO – UNFAIR TRADE PRACTICES ACT AGAINST ALL DEFENDANTS**

57. Plaintiff incorporates all previous paragraphs as though stated herein.

58. Joseph Schwartz intended to defraud employees, vendors and nursing home residents at the time he recklessly grew his empire by over 2000% in the span of less than a year. The plan was simple: collect revenues from his 100+ nursing homes, while refusing to honor agreements with virtually everyone. For example, many of Mr. Schwartzes' employees had health

insurance premiums deducted every pay check, only to undergo various medical procedures and be left with the bill. ***No insurance was purchased.***

59. Others, like Plaintiff, engaged in a year-long pursuit of unpaid bills, only to have the Skyline Enterprise set up a phony office in Virginia Beach (replacing the New Jersey Pizza location), then change its name to First Landing, and then simply refuse to respond to emails or phone calls. Defendants' above described conduct, misrepresentations and omissions as well as plaintiff's deception and/or injury occurred in great material part within the Commonwealth of Pennsylvania.

60. Defendants' conduct constitutes a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-1 *et seq*.

61. Specifically, but without limitation, the conduct and omissions described above violate sections 201-2 2 (4) (iii) and (xxi) of the UTPCPL. 73 P.S. § 201-2(4) (ii), (ix) and (xxi).

62. Plaintiff was deceived by Defendants' promises to compensate him for services rendered while never having the intention of doing the same.

63. Plaintiff reasonably relied to its detriment upon Defendants' deceptive statement that Plaintiff's statements would be paid. In reality, Defendants never intended to pay Plaintiff's statements.

64. Plaintiff has been damaged and harmed and has sustained ascertainable losses as a result of Defendants' deceptive practices that violate the UTPCPL.

WHEREFORE, Plaintiff, respectfully requests that judgment be entered in its favor, and against Defendants, in an amount in excess of Seventy Five Thousand Dollars ($75,000.00), together with punitive damages, costs, attorney's fees, treble damages, disgorgement and any other relief that this Honorable Court deems appropriate given the circumstances. A jury trial is demanded.

**COUNT THREE – TORTIOUS INTERFERENCE AGAINST THE SKYLINE ENTERPRISE**

65. Plaintiff incorporates all previous paragraphs as though stated herein.

66. Plaintiff entered into contracts with the Pennsylvania Facilities to provide medical transport services.

67. Unknown to Plaintiff at the time of contracting, the Pennsylvania Facilities intended to rely exclusively on the Skyline Enterprise to pay for the services rendered by Plaintiff.

68. However, the Skyline Enterprise had no intention of compensating Plaintiff for the services it provided to the Pennsylvania facilities and, therefore, the Skyline Enterprise intentionally interfered with the Pennsylvania Facilities' ability to satisfy their obligations under the contracts with Plaintiff.

69. As a result of the Skyline Enterprise's conduct, Plaintiff has suffered actual damage in the form of non-payment for services.

WHEREFORE, Plaintiff, respectfully requests that judgment be entered in its favor, and against Defendants, in an amount in excess of Seventy Five Thousand Dollars ($75,000.00), together with punitive damages, costs, attorney's fees, treble damages, disgorgement and any other relief that this Honorable Court deems appropriate given the circumstances. A jury trial is demanded.

**COUNT FOUR – UNJUST ENRICHMENT AGAINST THE SKYLINE ENTERPRISE**

70. Plaintiff incorporates all previous paragraphs as though stated herein.

71. The Pennsylvania Facilities were paid by Medicaid for transportation services for each resident eligible under the Pennsylvania Medicaid program. This money was transferred to the Skyline Enterprise through a variety of avenues including exorbitant "management fees."

72. Despite receiving the benefit of the transportation-included reimbursement rate of Medicaid residents, and despite receiving the benefit of Plaintiff providing transportation services to these residents, the Skyline Enterprise refused to compensate Plaintiff.

73. In failing to pay Plaintiff, the Skyline Enterprise was unjustly enriched at Plaintiff's expense.

WHEREFORE, Plaintiff, respectfully requests that judgment be entered in its favor, and against Defendants, in an amount in excess of Seventy Five Thousand Dollars ($75,000.00), together with punitive damages, costs, attorney's fees, treble damages, disgorgement and any other relief that this Honorable Court deems appropriate given the circumstances. A jury trial is demanded.

Respectfully Submitted,

**MURRAY, STONE & WILSON, PLLC**

Dated: April 25, 2019

Matthew T. Stone, Esquire
William P. Murray, III, Esquire
*Attorneys for Plaintiff, Romed, Inc.*