**MURRAY, STONE & WILSON, PLLC**
Matthew T. Stone, Esquire
Attorney Identification No. 206409
William P. Murray, III, Esquire
Attorney Identification No. 205016
One Belmont Avenue, Suite 310
Bala Cynwyd, Pennsylvania 19004
Phone: 215-947-5300
Email: mstone@mswlawgroup.com
      wmurray@mswlawgroup.com

THIS IS NOT AN ABRITRATION CASE. ASSESSMENT OF DAMAGES IS REQUIRED; JURY TRIAL DEMANDED.

Counsel for Plaintiff, Romed, Inc.

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROMED, INC., <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH SCHWARTZ, et al. <br><br> Defendants. | Civil Action No. 2:19-CV-1792-CMR |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AND FOR THE ENTRY OF DEFAULT**

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff's Motion for Sanctions (Doc. No. 37) was filed on April 24, 2020, predicated on Defendants' refusal to participate in the discovery process. Specifically, Defendant Joseph Schwartz refused to appear for a Court-Ordered deposition and refused to produce any documents in response to Plaintiff's discovery requests. Following several conference calls with Magistrate Judge Wells, and several delays, Mr. Schwartz "appeared" for deposition via Zoom on August 6, 2020.[1] This deposition was an unproductive farce and it was immediately clear that Mr. Schwartz

---

[1] The transcript of the August 6, 2020 deposition is attached as **Exhibit "A."**

remained comfortable with obstruction and obfuscation, even with the instant motion pending. If there was any doubt as to the merits of Plaintiff's motion, this doubt has been extinguished.

It was obvious from the first substantive question asked that Mr. Schwartz was content playing games:

> Q. Do you know what this case is about?
>
> A. Go on.
>
> Q. No, I'm asking you.
>
> A. Go on.
>
> Q. I don't know what you mean. Do you know what the case is.
>
> A. Ask questions. Ask questions.
>
> Q. I don't understand. What would you like me --
>
> A. I mean, I do understand. I answered you very correctly. And you'll follow, I answered you, you asked the question and I answered you. Go on.
>
> Q. What is the case about?
>
> A. Go on. Explain.
>
> Q. I'm asking you, sir.
>
> A. I answered.
>
> Q. What was your answer?
>
> A. Go on.
>
> Q. I don't believe that's responsive.
>
> A. Okay.[2]

---

[2] Schwartz Dep. Tr. at 10:3-22.

When he was not refusing to answer questions as in the above exchange, iterations of "I don't recall," and "I don't know" were the responses to virtually every question. His failing memory was not in response to technical questions or regarding times long ago; rather he could not recall where he was sitting for the deposition,[3] how many residences he owned,[4] how many commercial buildings he owned,[5] or even if he owned the one-time headquarters of Skyline Healthcare above the infamous pizza shop reported in the press.[6] He did not recall whether he uses email,[7] what he does for a living,[8] how he financed the purchased of over 100 nursing homes nationwide,[9] or whether he has any income.[10] He had a surprising lack of understanding how his nursing home empire came crashing down:

> Q. How did you find out that you were losing control of the Pennsylvania facilities?
>
> A. Don't remember.
>
> Q. Did you get a letter from anyone?
>
> A. Don't know.
>
> Q. Did you get any kind of --
>
> A. Don't remember the time.
>
> Q. Did anyone warn you or put you on any type of probation before they took action?
>
> A. Don't remember how it happened.
>
> Q. Was it a big deal to you?

---

[3] *Id.* at 14:10-15:9.
[4] *Id.* at 15:23-24.
[5] *Id.* at 16:2-3.
[6] *Id.* at 16:4-17. *See also* https://www.inquirer.com/philly/business/questions-about-skyline-healthcare-after-nursing-home-collapse-in-nebraska-and-kansas-20180412.html
[7] *Id.* at 17:12-13.
[8] *Id.* at 18:8-13.
[9] *Id.* at 30:5-6.
[10] *Id.* at 67:16-21

> A. Sure.
>
> Q. Did you contest the placing of the Pennsylvania facilities into receivership? Did you fight it at all?
>
> A. Don't recall.
>
> Q. And no one ever told you why it was happening?
>
> A. Don't remember.[11]

Perhaps his most honest answer came in response to "Do you know anything about the operation of nursing homes?" His response: "I don't recall."[12]

At no point during the ***more than 80 instances of "I don't recall/remember"*** did Mr. Schwartz's attorneys step in to warn him about his inappropriate answers.[13] *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 195 (E.D. Pa. 2008) ("An attorney faced with such a client cannot, however, simply sit back, allow the deposition to proceed, and then blame the client when the deposition process breaks down."). Compounding this was the fact that Mr. Schwartz would periodically have other individuals in the room with him, ***including key witnesses*** from whom he appeared to be taking cues.[14] Again, this was not met with any warning by his attorneys. In short, Plaintiff was unable to glean from Mr. Schwartz: (1) the nature of his assets and whether the same would be sufficient to satisfy any judgment against him; (2) the relationship of the various defendant limited liability companies; (3) the circumstances regarding the placement of his facilities into receivership; (4) and the scope and location of Court-Ordered documents.

Plaintiff has requested that this Honorable Court sanction Defendants, through the entry of default, for Mr. Schwartz's failure to participate in the discovery process. This request has only

---

[11] *Id.* at 41:2-20
[12] *Id.* at 37:10-11.
[13] Counsel did intercede when Mr. Schwartz asked: "Do I need to answer where I am?" *Id.* at 12:24-13:7. Of course, Mr. Schwartz did not follow his attorney's advice.
[14] *Id.* at 61:2-62:12

been buttressed by Mr. Schwartz's deposition conduct. However, in the event the Court is reluctant to take such steps, Plaintiff requests that an Order be entered holding Mr. Schwartz in contempt. Rule 37(b)(1) is clear: "If the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court." Fed. R. Civ. P. 37(b)(1). As Judge Simandle stated:

> Civil contempt is a means by which the Court may, if necessary, ensure that its discovery orders are obeyed. Fed.R.Civ.P. 37(b)(1) & (b)(2)(A)(vii). "It vindicate[s] the District Court's authority over a recalcitrant litigant." *Hutto v. Finney*, 437 U.S. 678, 691, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). "[C]ivil contempt may be employed to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience." *McDonald's Corp. v. Victory Investments*, 727 F.2d 82, 87 (3d Cir.1984).

*Andrews v. Holloway*, 256 F.R.D. 136, 140–41 (D.N.J. 2009). A plaintiff seeking a contempt order must show by clear and convincing evidence: (1) that a valid court order existed; (2) that defendant had knowledge of the order; and (3) that defendant disobeyed the order. *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir.1990). Here, there is no dispute that there was a valid Order[15] (Doc. No. 36), or that Defendant had notice of this Order. Mr. Schwartz's disobedience of this Order was shown in both his initial non-compliance – requiring Judge Wells June 18, 2020 Order – but in his evasive answers to questions once he did ultimately sit for deposition. "When a party attends a deposition and answers questions in an uncooperative and evasive manner, it is tantamount to failing to appear and warrants that party being held in contempt of court." *See Andrews v. Holloway*, No. 95-1047, 2009 WL 690670, at *141-42 (D.N.J. Mar. 12, 2009) (citing *Black Horse Lane Assoc. v. Dow Chem. Corp.*, 228 F.3d 275, 304-05 (3d Cir. 2000)); see also *Burgos v. City of Philadelphia*, 439 F. Supp. 3d 470, 492 (E.D. Pa. 2020) (J. Rufe)

---

[15] In fact, this Order was amplified by Judge Wells' June 18, 2020 Order. (Doc. No. 42).

(awarding sanctions under Rule 37). Unfortunately, judicial oversight over the discovery process in this matter is required. Simply put, Plaintiff cannot prosecute its case. In obstructing discovery, Mr. Schwartz has thus far been able to skirt responsibility for what is clear-cut liability.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter an Order entering judgment by default in favor of Plaintiff and against Defendants in the amount of $342,341.84, or in the alternative, enter an Order compelling Mr. Schwartz to appear to testify in open Court at the James Byrne Courthouse.

Respectfully submitted,

Dated: August 26, 2020

/s/ *Matthew T. Stone*
Matthew T. Stone, Esquire
Pennsylvania Attorney ID No. 206409
MURRAY, STONE & WILSON, PLLC
One Belmont Avenue, Suite 310
Bala Cynwyd, PA 19004
215-947-5300 (phone)
*Attorneys for Plaintiff*